Charles PHILLIPS, Individually and as Administrator of the Estate of Angelia Stewart, Deceased; Jim Stewart; and Randy and Teresa Stephens, as Guardians for Sharlotte Marie Stewart, A Minor Child, Appellants,

v.

THE DOW CHEMICAL COMPANY, Appellee.

Charles Phillips, Individually, Appellant,

v.

Sulzer Chemtech USA, Industrial Specialists, Inc., and Altair Strickland, L.L.P., f/k/a Altair Strickland, Inc., Appellees.

Nos. 01–03–00107–CV, 01–03–00451–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 30, 2005.

Darrin M. Walker, Law Offices of Darrin Walker, Kingwood, TX, for Appellants.

John R. Gilbert, Gilbert & Gilbert, Angleton, TX, for Appellee in No. 1-03-00107-CV.

Joseph W. Gagnon, Russell Ramsey, Kathryn P. Anderson, Norman Edward Snyder Jr., Houston, TX, Jerry Ewing, Dallas, TX, appellees in No. 01-03-00451-CV.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Angelia Stewart (Stewart) died when she fell from scaffolding on a worksite. Charles Phillips, who contended that he was Stewart's husband, asserted wrongful-death claims on his own behalf and a survival claim on behalf of Stewart's estate.[1] Jim Stewart, Stewart's father, also sought recovery for wrongful death and as a by-stander, due to his presence when she was injured. Randy and Teresa Stephens, guardians of Stewart's minor daughter, also asserted wrongful-death claims.

The appeal in Cause No. 01–03–00107–CV challenges the summary judgment rendered against all appellants in favor of Dow Chemical Company (Dow), the owner of the premises where Stewart was working. Dow prevailed on its claim that it owed no duty to Stewart as a matter of law because Dow neither retained nor exercised a right of control over her work.

The remaining appeals concern Phillips's standing to assert claims against any of the defendants. Phillips challenges the summary judgments rendered against him on the grounds that, as a matter of law, he was not Stewart's surviving spouse and therefore lacked standing to assert wrongful-death claims. Summary judgment was rendered in favor of Dow in Cause No. 01–03–00107–CV, and in favor of Sulzer Chemtech USA (Sulzer), the general contractor for the project at the worksite, Industrial Specialists, Inc. (ISI), which erected the scaffolding and connecting ladders used for the project, and Altair Strickland, LLP, f/k/a Altair Strickland, Inc. (Altair), Stewart's employer, in Cause No. 01–03–00451–CV.[2] We affirm.

### Factual Background

Stewart and her father, Jim Stewart, both worked for Altair and were members of a crew working on a large, repair project on a seven-level vessel at Dow's plant in Freeport. Stewart and her father worked in the 7100 block of a unit referred to as Styrene 2, which was being repaired. Steward was assigned to a "manway" located on the fourth level of Styrene 2. Stewart's job was to sign workers in and out of a confined space known as "the hole," and to observe the hole for fire danger. Scaffolding had been erected around the sides of the vessel, and ladders connected the different levels of the scaffolding. At the close of the workday on March 8, 2000, Stewart climbed down the scaffolding to the second level, where she stopped to speak with her father. After she started back down the ladder from the second level, she fell about 20 feet to the ground below, sustaining serious injuries. Stewart died, intestate, on August 19, 2000.

### Procedural History

Appellants alleged negligence and gross negligence claims against Dow, Sulzer, and ISI, and a constitutional, gross-negligence claim against Altair.[3] Dow and other defendants sought summary judgment in the trial court. Dow filed traditional and no-evidence motions for summary judgment, asserting that chapter 95 of the Civil Practice and Remedies Code controlled and negated any duty that Dow owed to Stewart. In a signed order granting both mo-

---

1. See TEX. CIV. PRAC. & REM.CODE ANN. § 71.001–.012 (Vernon 1997 & Supp.2004–2005) (wrongful death action); TEX. CIV. PRAC. & REM. CODE ANN. § 71.021 (Vernon 1997) (survival action).

2. We refer to Dow, Sulzer, ISI, and Sulzer collectively as appellees.

3. See TEX. CONST. Art. XVI, § 26; TEX. LAB.CODE ANN. § 408.001 (Vernon 1996).

tions, the trial court stated its conclusion that Dow owed no duty to Stewart because Dow lacked sufficient control over either Sulzer or Altair on which to base a duty of care. Dow also sought traditional summary judgment contending that Phillips lacked standing, either as a surviving spouse or as an individual, because he was not Stewart's husband as a matter of law. ISI, Altair, and, later, Sulzer, filed traditional motions for summary judgment asserting similar challenges to Phillips's standing to sue on his own behalf. The trial court granted these motions and dismissed all claims asserted by Phillips, but specifically reserved the claims by the estate pending appointment of a new administrator.

The trial court severed all claims against Dow into a separate cause, from which all plaintiffs perfected an appeal, in Cause No. 01–03–00107–CV, to challenge the summary judgment rendered in favor of Dow on the issue of its lack of retained or exercised control. The trial court granted an additional severance for the claims resolved by the second series of summary judgments, rendered on the issue of Phillips's standing, from which Phillips perfected an appeal in Cause No. 01–03–00451–CV. The trial court's orders specify that all claims asserted by the estate in the main cause were not severed and remain to be tried in the main case, pending appointment of a representative who would replace Phillips.

### Standard of Review

We review summary judgments de novo, under well-settled standards that require the movant to prove that no material issues of fact remain and that the movant was entitled to judgment as a matter of law. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). A defendant may prevail on a traditional motion for summary judgment by conclusively proving that no genuine issue of material fact exists as to any element of a defendant's affirmative defense, and that the defendant is therefore entitled to prevail as a matter of law. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). A "no evidence" motion for summary judgment is proper if, after adequate time for discovery, the movant shows that the nonmovant has produced no evidence on at least one essential element of the nonmovant's theory of recovery. *See* Tex.R. Civ. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). In conducting our review, we resolve all doubts in favor of the nonmovant. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003).

We may affirm the trial court's summary judgment if any of the theories presented to the trial court are meritorious, preserved for appellate review, and necessary for final disposition of the appeal, in addition to other grounds preserved for review on which the trial court did not rule. *See Provident Life & Accident*, 128 S.W.3d at 216; *see also Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

### Phillips's Void Marriage

■■■■ Phillips's single issue in Cause No. 01–03–00451–CV and appellants' second, third, and fourth issues in Cause No. 01–03–00107–CV challenge rendition of summary judgment in favor of appellees on the grounds that Phillips lacked standing under the wrongful death and survival statutes because he was not Stewart's surviving spouse as a matter of law. A surviving spouse has standing to pursue a survival action and a wrongful-death claim. Tex. Civ. Prac. & Rem.Code Ann.

§§ 71.0001–.0021 (Vernon 1997). Standing is a prerequisite to the trial court's exercise of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). A challenge to standing presents a question of law, *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), and is therefore appropriate for resolution by summary judgment.

■ Appellees' motions for summary judgment challenged the standing of Phillips as a surviving spouse under section 6.202(a) of the Family Code. Section 6.202(a) states that "[a] marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse." Tex. Fam. Code Ann. § 6.202(a) (Vernon 1998). Thus, a marriage entered into while one party is married to another person is void from the outset as a matter of law. *Dodd v. Dodd,* 17 S.W.3d 714, 716 (Tex.App.-Houston [1st Dist.] 2000), *disapproved on other grounds,* 124 S.W.3d 163 (Tex.2003); *Villegas v. Griffin Indus.,* 975 S.W.2d 745, 749–50 (Tex.App.-Corpus Christi 1998, pet. denied).

■ A man and a woman may agree to become husband and wife, live together as husband and wife, publicly profess to be husband and wife, and thus establish the elements of a common-law marriage relationship. *See Villegas* at 749–50. But, if either the husband or the wife is impeded by a prior marriage, their relationship does not constitute a common-law marriage. *Id.* at 750. Texas recognizes common-law marriage, but does not recognize common-law divorce or annulment. *Id.;* *see Claveria's Estate v. Claveria,* 615 S.W.2d 164, 167 (Tex.1981). In Texas, whether established ceremonially or at common law, a marriage can terminate only by death, divorce, or court-decreed annulment. *Villegas,* 975 S.W.2d at 750. Proof that a prior marriage was not terminated, by either death or a court decree, overcomes any presumption that a later marriage is valid. *See id.* at 750.

■ The summary judgment record establishes that Phillips filed an application for letters of administration on September 13, 2000 and obtained letters of administration on October 20, 2001. Phillips filed an application to determine heirship in mid-February 2001. In both of these applications, Phillips claimed that he was Stewart's husband. The Galveston County Probate Court's November 1, 2001 judgment declaring heirship included a finding that Phillips was married to Stewart when she died.

It is undisputed that Phillips was not ceremonially married to Stewart. Phillips's sworn testimony, however, asserted that his common-law marriage to Stewart began in 1994 or 1995. Phillips's sworn affidavit also acknowledged that he had been married before, although he claimed that he and his former wife "separated" in "approximately 1992" and "were divorced sometime thereafter and before 1998."

On June 7, 2001, however, Phillips's spouse from that marriage sued for divorce in the Circuit Court of Escambia County, Alabama. In her sworn petition in that lawsuit, the former spouse sought to dissolve "the bonds of matrimony" between her and Phillips. In his sworn answer to that petition, filed on June 7, 2001, 10 months after Stewart died, Phillips admitted the fact of the marriage, as alleged in the Alabama petition, and referred to the petitioner as "my wife." The Alabama court issued a decree of divorce on July 9, 2001. Nothing in that decree indicates that it replaced an earlier decree that, Phillips claimed, neither he nor his former spouse was able to locate.

The record thus demonstrates that Phillips mistakenly believed that he was divorced in 1994, when he entered into what he contends that both he and Stewart understood to be, and desired to be, a common-law marriage relationship. But, because Phillips's prior marriage had not been terminated before his relationship with Stewart began and did not terminate until July 9, 2001, almost one year after Stewart died on August 19, 2000, their relationship could not, as a matter of law, constitute a common-law marriage between 1994 and August 19, 2000. TEX. FAM.CODE ANN. § 6.202(a); *Dodd*, 17 S.W.3d at 716; *Villegas*, 975 S.W.2d at 750.

Phillips nevertheless presents several theories to support his contention that his summary judgment evidence, principally his affidavit, raised sufficient fact issues to create a triable issue for a jury's determination concerning whether he was Stewart's common-law husband. Phillips asserts that he presented abundant evidence of the three elements necessary to establish a common-law marriage, specifically, living together as husband and wife, agreeing to be married, and representing to others that a marriage relationship existed. *See Villegas*, 975 S.W.2d at 749. He refers to Stewart's death certificate, which lists Phillips as her spouse, their income-tax records, and evidence that he received worker's compensation benefits as her spouse. As *Villegas* recognizes, however, the parties to an allegedly common-law marriage are impeded from establishing that relationship, as Phillips is here, by proof of an existing marriage that has not been terminated by death, divorce, or annulment. *See id.* at 749–50.

Phillips also contends that his belief that his prior marriage had ended by divorce gives rise to triable issues for a jury's determination. Although Phillips cites no authority to support his contention, this Court held, in *Dodd*, that a mistaken belief that a marriage had ended does not present a factual dispute on the issue whether a common-law marriage exists. 17 S.W.3d at 716.

Phillips also asserts that he is a putative spouse, whose most recent "marriage," to Stewart, is presumptively valid under the Family Code. Phillips relies on the presumption stated in Family Code section 1.102. "When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes the most recent marriage…:." TEX. FAM.CODE ANN. § 1.102 (Vernon 1998). Phillips's arguments ignore that proof that a prior marriage is valid destroys the presumption. *See id.* Appellees defeated the presumption that Phillips's alleged marriage to Stewart was valid through the sworn answer that Phillips filed in the Alabama divorce action. As addressed above, Phillips's sworn answer in that action admitted the fact of the prior marriage and referred to the former spouse who filed that action as his wife.

■ Phillips also defends his status as Stewart's surviving spouse by relying on the decrees of the Galveston County Probate Court, which declared that he is Stewart's husband and heir. Phillips argues that appellees are collaterally estopped from contesting that determination. We begin by noting that the trial court properly addressed the spousal issue because standing is a prerequisite to subject-matter jurisdiction. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443. It is well-settled that the standing of claimants who assert survivor or wrongful-death rights is determined by the statutes governing those claims. *See Garza v. Maverick Market, Inc.*, 768 S.W.2d 273, 275–276 (Tex.1989); *Buster v. Metro. Trans. Auth.*, 835 S.W.2d

236, 237 (Tex.App.-Houston [14th Dist.] 1992, no writ).

Although the record shows that the probate court declared that Phillips is Stewart's husband and heir, neither the trial court nor appellees is bound by that determination. Collateral estoppel principles did not apply to preclude appellees' challenge to Phillips's standing, because no appellee was a party to the probate-court proceeding. *See State & County Mut. Fire Ins. Co. v. Miller,* 52 S.W.3d 693, 696 (Tex.2001) (*noting* that party to second lawsuit may invoke collateral estoppel to bar second lawsuit on grounds of party's involvement in first lawsuit that actually litigated issue that was essential to judgment in first lawsuit and identical to issue in second lawsuit). But, conversely, because Phillips was a party to the Alabama court decree that dissolved his earlier marriage, *see id.,* collateral estoppel principles preclude his contesting the dissolution of his prior marriage by that decree.

 Phillips also asserts that the affirmative defense of lâches bars all challenges to his status as Stewart's surviving spouse because the challenges came too late. Lâches is generally available as an affirmative defense solely in suits in equity and therefore does not apply to statutory challenges. *See Houston Lighting & Power Co. v. City of Wharton,* 101 S.W.3d 633, 638 (Tex.App.-Houston [1st Dist] 2003, pet. denied). Moreover, because lack of standing defeats subject-matter jurisdiction and cannot be waived, a challenge to standing may properly be raised at any time and may even be raised for the first time on appeal. *See West Orange–Cove Consol. Indep. Sch. Dist. v. Alanis,* 107 S.W.3d 558, 583 (Tex.2003). Lâches did not bar appellees, therefore, from contesting Phillips's standing as Stewart's husband and, thus, from challenging the trial court's jurisdiction to consider his claims.

We conclude that appellees established the absence of any genuine issues of material fact concerning Phillips's lack of standing to pursue a remedy under the wrongful-death statute and conclusively established that Phillips was not Stewart's husband as a matter of law. Accordingly, they were entitled to summary judgment on that claim as to Phillips, both individually and as administrator of Stewart's estate.

We overrule Phillips's single issue in Cause No. 01–03–00451–CV and appellants' second, third, and fourth issues in Cause No. 01–03–00107–CV, in which they challenge rendition of summary judgment on the grounds that Phillips lacked standing under the wrongful death and survival statutes.

### Survivor and Wrongful–Death Claims against Dow

In Cause No. 01–03–00107–CV, all appellants assert that the trial court erred by granting Dow's traditional and no-evidence motions for summary judgment. The order rendering summary judgment in favor of Dow recites the trial court's conclusion that Dow "did not retain any right of control over the general contractor's or the subcontractors' work sufficient to impose any duty of care." In rendering summary judgment on this basis, the trial court granted Dow's motion for traditional summary judgment.

Appellants contend that the trial court did not render summary judgment under chapter 95, that chapter 95 is inapplicable to this case, and that if Chapter 95 is applicable, their summary-judgment evidence raised fact issues that made summary judgment improper. Dow responds that it relied on chapter 95 principles in moving for summary judgment, that chapter 95 provides the exclusive remedy for

claims like those presented here, and that the trial court properly rendered summary judgment in Dow's favor because appellants did not raise material fact issues.

## A. Whether Chapter 95 Applies

 Appellants assert that chapter 95 "played no role" in the trial court's decision to render summary judgment in Dow's favor and that chapter 95 does not apply to this case at all. Appellants are correct that the trial court's order does not specifically mention Chapter 95 by stating simply that Dow "did not retain any right of control over the general contractor's or the subcontractors' work sufficient to impose any duty of care." Appellants contend that the decision in *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 624 (Tex.1996), precludes our addressing any other basis on which Dow relied in seeking summary judgment. To the contrary, *Cincinnati Life* holds that, in addition to reviewing all summary-judgment grounds on which the trial court expressly ruled, the reviewing court may, in the interests of justice, address other grounds that the movant preserved for appellate review, but on which the trial court did not rule. *Id.* at 625.

Appellants further contend that, because the trial court's order does not refer specifically to chapter 95, the trial court did not resolve the summary judgment on chapter 95 grounds, and, therefore, that we may not consider chapter 95 in our analysis. Relying again on lack of a specific reference to chapter 95, appellants further contend that the trial court rendered summary judgment in Dow's favor under the common law, which, appellants contend, not only remains in effect despite the enactment of chapter 95, but also bars summary judgment in Dow's favor. Appellants emphasize that in rendering summary judgment in Dow's favor on the

grounds of absence of duty owed to Stewart, the trial court specified only that Dow did not retain any right of control over the general contractor's or subcontractors' work, but the trial court did not address Dow's contention that it lacked actual knowledge of the dangerous condition that resulted in Stewart's injury.

 It is undisputed that Dow's arguments in support of its motion for summary judgment included chapter 95 grounds. Dow thus complied with rule 166a(c), which precludes rendering summary judgment on grounds other than those on which the movant relied in seeking summary judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cincinnati Life*, 927 S.W.2d at 625–26; *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) ("A motion must stand or fall on the grounds expressly presented in the motion."); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993) ("[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion...."). Dow's reliance on chapter 95 in moving for summary judgment enabled the trial court to consider chapter 95 principles in ruling on Dow's motion. If chapter 95 principles govern this case, and if the trial court's ruling is consistent with chapter 95 principles, then the trial court's lack of specific reference to chapter 95 is immaterial.

 To determine whether chapter 95 applies, we must construe the statute. Issues of statutory construction raise questions of law that we properly review de novo in the summary judgment context. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002); *see also Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 83 (Tex.App.-Houston [1st Dist] 2003, no pet.); *Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 200–02 (Tex.App.-Houston [1st Dist.] 2000, pet.

denied) (both *analyzing* applicability of chapter 95).

The Legislature enacted Chapter 95 of the Civil Practices and Remedies Code in 1996 as part of a broad tort-reform package. TEX. CIV. PRAC. & REM.CODE ANN. §§ 95.001–.004 (Vernon 1997); *see Francis*, 130 S.W.3d at 82. Chapter 95 governs "Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery" and pertains to claims "for damages caused by negligence" against a "property owner." TEX. CIV. PRAC. & REM. CODE ANN. § 95.001(1)-(3) (Vernon 1997). Section 95.001(3) defines "property owner" as "a person or entity that owns real property primarily used for commercial or business purposes." TEX. CIV. PRAC. & REM. CODE ANN. § 95.001(3).

Chapter 95 specifies that it "applies only to a claim" described as follows:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; *and*

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM.CODE ANN. § 95.002(1)-(2) (Vernon 1997) (emphasis added).

From the plain meaning of the statute, chapter 95 applies to appellants' claims. Appellants' pleadings allege that Stewart was injured while on the job at a worksite defined as Dow's Freeport plant. It is undisputed that Dow owns this premises, that this premises is real property, that Dow uses this premises for commercial or business purposes, and that Dow was sued in those capacities. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.001(3). Appellants

further alleged that Dow was "charged with the duty of reasonable, or ordinary, care in being sure that the premises upon which Angelia Stewart was working and the equipment Plaintiff [sic] was using were reasonably safe." Similarly, appellants claim "damages," for Stewart's "personal injur[ies]" and "death," allegedly caused by negligence (and gross negligence) "arising from" Dow's "failure to provide a safe workplace." *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 95.002(1), 95.003.

Appellants summarize their numerous, specific allegations of misconduct or lack of conduct by Dow as "constit[ing] negligence as that term is defined at law." *See Francis*, 130 S.W.3d at 88 (*holding* that trial court's recognizing "some evidence" of negligence of premises owner that proximately caused alleged injuries did not give rise to common-law duty beyond scope of chapter 95); *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 710 (Tex.App.-Houston [14th Dist.] 2004, pet. filed) (majority opinion on en banc reconsideration) (*recognizing* that chapter 95 encompasses all common-law negligence claims); *Kelly v. LIN Television*, 27 S.W.3d 564, 569–70 (Tex.App.-Eastland 2000, pet. denied) (*holding* that chapter 95 encompassed assertions of negligence, negligence per se, res ipsa loquitur, and negligent misrepresentation). Chapter 95 specifically pertains to claims for "damages caused by negligence" alleged against a "property owner" like Dow. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.001(1)-(3).

Lastly, appellants challenge the applicability of chapter 95 on the grounds that their claims do not arise from a "condition or use of real property," as required by section 95.002(2), because Stewart's injuries arose from her fall from scaffolding and not from any work she was performing on Dow's styrene unit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.002(2). But,

as Dow stressed in moving for summary judgment, "failure to provide a safe workplace" under section 95.003, means that, although the injuries alleged must relate to work being done by the injured party, the statute does not require that the injury-producing defect must be the object of the injured party's work. *See Francis,* 130 S.W.3d at 83; *see also Fisher,* 16 S.W.3d at 202 (*construing* legislative history and *holding* that injury resulting from defective ladder contractor used to access air-conditioning unit contractor was hired to repair was injury within scope of section 95.002(2)). Stewart worked as holewatch and firewatch for cleanup, or "repair" or "renovation" work that her employer, Altair, was performing as a subcontractor to the general contractor, Sulzer. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.002(2). Stewart was working on the manway located on the fourth level of Dow's unit and could access that level only by the scaffolding erected by ISI. The scaffolding from which she fell was an "improvement to real property" owned by Dow. *See id.* Accordingly, the scaffolding from which Stewart fell was sufficiently related to Stewart's injuries to bring Dow within the protections of chapter 95.

We hold that appellants alleged claims within chapter 95, which preempted their common-law claims, that Dow relied on chapter 95 in seeking summary judgment, and that the trial court's ruling is premised on chapter 95.

## B. General Rule of Chapter 95: Property Owner Not Liable

▬ Appellants alternatively contend that if chapter 95 applies, their summary-judgment evidence raised fact issues concerning Dow's actual knowledge of the dangerousness of the scaffolding equip-

ment and, in addition, concerning Dow's control over both scaffolding and fall restraints at the worksite. Dow responds that the trial court properly rendered summary judgment in Dow's favor because appellants did not raise material fact issues concerning whether Dow (1) had a right to control how the work was performed and (2) had actual knowledge of the dangerous condition that resulted in Stewart's injury.

When, as here, chapter 95 applies, a property owner will not be liable for negligence claims arising from the failure to provide a safe workplace *unless:*

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress and receive reports; *and*

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1)-(2) (Vernon 2005) (emphasis added). The first condition of section 95.003 codifies the common-law holding of *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985), which adopted section 414 and accompanying comments of the Restatement (Second) of Torts; the second condition requires actual, rather than merely constructive, knowledge by the premises owner concerning the allegedly dangerous condition. *See Dyall,* 152 S.W.3d at 699 & n. 13 (*citing* GEORGE C. HANKS, JR., *When Sticks and Stones May Break Your Bones: An Overview of Texas Premises Liability Law for Business Owners,* 60 TEX. B.J. 1010, 1021 (1997) (HANKS)).[4] Both conditions of section

---

4. Because section 95.003(1) codifies the com- mon law of *Redinger v. Living, Inc.,* 689

95.003 must be met before Chapter 95's exception to the general rule of nonliability for a premises owner will be imposed. *See Rueda v. Paschal,* 178 S.W.3d 107, 110 (Tex.App.-Houston [1st Dist.] 2005, no pet. h.); *Francis,* 130 S.W.3d at 83; *Dyall,* 152 S.W.3d at 699; *Kelly,* 27 S.W.3d at 567. As Dow emphasized in moving for traditional summary judgment, section 95.003(2) elevated the alternative, common law, "should have known" test of the premises owner's knowledge of a dangerous condition, to an "actual knowledge" requirement. *Compare* Tex. Civ. Prac. & Rem.Code Ann. § 95.003(2) (*requiring* actual knowledge) with *Williams v. Olivo,* 952 S.W.2d 523, 527 (Tex.1997) (*recognizing* that duty to warn of dangerous conditions could be based on constructive knowledge of that condition, as well as actual knowledge) (*citing Shell Chem. Co. v. Lamb,* 493 S.W.2d 742, 746 (Tex.1973)).

■ Because Dow's motion for summary judgment established that chapter 95 applies to appellants' claims, appellants had to present evidence demonstrating triable issues of fact concerning both required elements of section 95.003 to overcome that statute's general rule of nonliability. *See* Tex. Civ. Prac. & Rem.Code Ann. § 95.003; *Rueda,* 178 S.W.3d at 110; *Fisher,* 16 S.W.3d at 203; *Dyall,* 152 S.W.3d at 699, 709–10; *Kelly,* 27 S.W.3d at 567 (all *addressing* nonmovant's burden under section 95.003 in summary judgment context); *see also Francis,* 130 S.W.3d at 83 (*analyzing* plaintiff's failure to meet evidentiary burden under section 95.003 in context of judgment notwithstanding verdict).

## C. Dow's Motion for Traditional Summary Judgment

Dow's motion for traditional summary judgment pursuant to rule 166a(c) relied on both requirements of the exception to the general rule of nonliability for premises owners created by section 95.003, but emphasized, in particular, subsection (1), the requirement of a showing that Dow had exercised or retained some control, beyond the right to order work to start or stop, to inspect progress, or to receive reports. *See* Tex. Civ. Prac. & Rem.Code Ann. § 95.003(1).

Dow first demonstrated that its hold-harmless agreement with Sulzer, the general contractor for the cleanup project for Styrene 2, expressly disclaimed control over the project. Paragraph 2 of the hold-harmless agreement in favor of Dow, which delineated contractor responsibilities, stated that Sulzer was an independent contractor for the project and required to "assume all of the rights, obligations, and liabilities" applicable to Sulzer as an independent contractor. The same paragraph expressly disclaimed any right of Dow to direct the cleanup project by further stating that

*Any provisions* in this Contract or in any contract or purchase order to which this Contract applies *which may appear to give DOW the right to direct [Sulzer] as to the details of doing the work covered by that contract or purchase order or to exercise a measure of control over the work shall be deemed to mean that [Sulzer] shall follow DOW's desires in the result of the work only.* Neither [Sulzer] nor any its employees or agents shall be considered an employee or agent of DOW, nor shall any partnership, co-venture, or joint-employer relationship be created by virtue of this Contract, any contract or purchase order to which this Contract is applicable,

S.W.2d 415, 418 (Tex.1985), it follows that prechapter 95 case law construing the control

requirement has relevance in interpreting the control requirement of section 95.003(1).

or the performance of any of them. All persons engaged by [Sulzer], either as employees or agents, to assist [Sulzer] in the performance of this Contract or any contract or purchase order to which this Contract applies shall be of [Sulzer's] own selection, for its own account, at its own expense, and under its supervision.

(Emphasis added.) The summary judgment record shows that ISI and Altair representatives executed hold-harmless agreements in favor of Dow containing the same provision.

In addition to precluding Dow from controlling or directing the repair work on its Styrene 2 unit, except as to its "desires" for the results of the work, this provision of the hold-harmless agreements negated, in advance, any contractor's doubts about whether Dow had control over the repair work, a right to control it, or any responsibility for it, whether arising from Dow's contracts with Sulzer, ISI, or Altair, or any other contract or purchase order derived from those contracts. Construing virtually identical terms in *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606–07 (Tex. 2002), the supreme court ruled that the premises owner had no right of control over its subcontractor and therefore owed no duty to the injured plaintiff.[5]

Concerning the scaffolding from which Stewart fell, Dow's motion demonstrated, through deposition testimony attached to the motion for summary judgment, that ISI had responsibility for erecting the scaffolding around the styrene unit and for inspecting it at the end of every shift. Dow's summary-judgment evidence fur-ther demonstrated that Dow took no part in those inspections.

Dow's motion for traditional summary judgment argued that, pursuant to the express provisions of its hold-harmless agreements with Sulzer, ISI, and Altair, therefore, any minimal control that Dow might have had over the project did not extend beyond the end result requested. Accordingly, Dow contended the hold-harmless agreement precluded extending to Dow control over the cleanup project or the power to direct the operative details of the work performed by Sulzer, the general contractor; or the work performed by the subcontractor, ISI, which was responsible for constructing and for inspecting daily the scaffolding from which Stewart fell, or the work performed by Stewart's employer, Altair.

**D. Appellants' Response to Dow's Motion for Traditional Summary Judgment**

■ Appellants' response presented multiple grounds in opposition to Dow's motion. These included the legal challenges to the applicability of chapter 95 that we have addressed and rejected above. Appellants' remaining legal challenge assumed, but did not concede, that chapter 95 applied, which would, therefore, require proof to meet section 95.003(2)'s requirement that Dow had actual knowledge of the allegedly dangerous condition giving rise to Stewart's injuries. Appellants then argued that Dow's conduct amounted to "negligent ignorance," which, appellants maintained, is the same as "actual knowledge."

---

**5.** Although *Dow Chem. Co. v. Bright*, 89 S.W.3d 602 (Tex.2002), construes the common law of premises liability for injuries at a worksite, its holdings are relevant because section 95.003(1), the first of the two elements that must be established for a premises owner to be liable under chapter 95, codifies the common law. *See Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 & n. 13 (Tex. App.-Houston [14th Dist.] 2004, pet. filed) (citing GEORGE C. HANKS, JR., *When Sticks and Stones May Break Your Bones: An Overview of Texas Premises Liability Law for Business Owners*, 60 TEX. B.J. 1010, 1021 (1997)).

On reviewing appellants' contention, we conclude that it attempts to reinstate the now rejected common-law principle that not only actual knowledge, but also constructive knowledge of a dangerous condition by a premises owner suffices to impose liability on the premises owner. *See Williams*, 952 S.W.2d at 527. As addressed above, in enacting chapter 95, the Legislature did not include constructive knowledge as a basis for imposing liability on a premises owner; instead, the Legislature expressly required that the premises owner have actual knowledge of the allegedly dangerous condition. *Compare id. with* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(2); *see* HANKS, 60 TEX. B.J. at 1021. Accordingly, we reject appellants' contention that "negligent ignorance" equates to actual knowledge under chapter 95.

### E. Lack of Actual Control by Dow

Appellants also presented summary judgment evidence in opposition to Dow's motion for summary judgment, which, they argued in the trial court and on appeal, raised sufficiently triable issues of fact concerning Dow's control to preclude summary judgment in Dow's favor.

As addressed above, Dow's motion for traditional summary judgment demonstrated that its hold-harmless agreements with Sulzer, ISI, and Altair did not give rise to a duty owed to Stewart because the agreements did not confer, but rather precluded, any right of retained control in Dow. It is undisputed that Dow's safety supervisor had the right to order work stopped for safety violations or concerns and had done so on occasion in the past. But, this right does not suffice as a fact issue that could trigger section 95.003(1)'s first condition for nonliability, because section 95.003(1) explicitly requires that the premises owner exercise or retain more control over the manner in which work is performed than the right to order it stopped. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003; *Dow Chem. Co.*, 89 S.W.3d at 608. Moreover, although it is also undisputed that Dow engaged independent safety personnel to supervise the cleanup project, mere presence of the premises owner's safety personnel at a worksite is likewise insufficient to demonstrate that the owner actually exercised control over the work. *See Dow Chem. Co.*, 89 S.W.3d at 608.

Appellants further contend that Dow exercised actual control by promulgating Safety Standard No.—71 concerning "Fall Restraint System Use." Paragraph 1 of this standard required that a "fall restraint system with continuous attachment" be used by personnel in "work areas not protected by guardrails where there is a danger of employees falling from a distance of six feet or greater." Because Stewart had to perform her work at a level above six feet and fell approximately 20 feet, appellants argued that Dow's regulation was evidence that Dow exercised actual control by enacting a regulation that applied to Stewart and therefore triggered a duty to her. Dow countered that Stewart was injured as she was descending the ladder and that Dow's fall-restraint requirements did not apply to workers who were descending ladders. We agree.

■■■ Paragraph 7 of the fall-restraint safety standards specifies that a fall-restraint device must be used when "personnel are working *off* ladders and the work require[s] them to be *outside* the 'confines of the ladder.'" (Emphasis added.) Taken together, paragraphs 1 and 7 of the safety standards compelled use of fall-restraints when workers are not protected by guardrails, when they are working off, as opposed to on, ladders, or when their work location went beyond the confines of

ladders. Moreover, proof that the premises owner promulgated safety standards and regulations is insufficient evidence of actual control unless there is also proof that they increased, rather than decreased, the possibility of severe injury. *See id.* Although appellants contend, on appeal, that Dow's safety standards and regulations increased the possibility of severe injury, their pleadings lack this claim, and no summary-judgment evidence supports this contention.

To avoid section 95.003's general rule of nonliability of the premises owner, appellants had to present triable issues of fact on both elements of the statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003. Having examined the summary judgment record de novo, we conclude that Dow conclusively established, as a matter of law, that it neither exercised nor retained control over the manner in which the cleanup of Styrene 2 was performed to a sufficient degree to give rise to a triable issue of fact concerning the first condition of section 95.003(1). We further conclude that appellants did not present summary-judgment evidence sufficient to defeat Dow's motion.

Because both elements of section 95.003 must be present for potential premises-owner liability, *id.*, and because Dow negated the "control" element of section 95.003(1), Dow also negated any exception to section 95.003's general rule of nonliability and was, therefore, entitled to prevail as a matter of law on appellants' survival and death claims against Dow.

We overrule appellants' first issue in Cause No. 01–03–00107–CV.

## Conclusion

We affirm the judgments of the trial court.