# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00617-CV

**Carey Earl James, Appellant**

**v.**

**Cousins Properties Texas, L.P., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-04-002275, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a no-evidence summary judgment granted in favor of Cousins Properties Texas, L.P. on Carey Earl James's claim for injuries suffered when the portable toilet in which he was sitting rolled off a loading dock. Cousins moved for summary judgment on the basis that there was no evidence that it exercised or retained control over the work being done that required a portable toilet, or that it had actual knowledge of the dangerous condition resulting in James's injuries. Specifically, Cousins argued that there was no evidence that Cousins had control over the portable toilet or its placement or that Cousins knew of any dangerous condition related to the portable toilet. James contends that some evidence raised a genuine issue of material fact on these issues. We affirm the summary judgment.

*Background*

Cousins owned the Frost Bank Tower where the incident at issue occurred. A tenant in the building hired SpawMaxwell Company, LP, to build out its space. SpawMaxwell hired Delta Granite & Marble to do a portion of the work. Delta employed James as a truck driver. On January 17, 2004, James delivered a truckload of stone to the Frost Bank Tower.

While at the building, James entered a portable toilet with wheels that was located on a sidewalk next to the loading dock which was approximately four feet from the ground. The toilet had been placed on the sidewalk by a SpawMaxwell employee to give Capital Chemcan access to clean it. While James was in the portable toilet, it rolled off the sidewalk/loading dock and fell four feet to the ground, injuring James.

James sued Cousins,[1] contending it was negligent in failing to provide him a safe workplace and failing to warn him of the dangers associated with the portable toilet. James alleged that Cousins was "in exclusive control of the common areas of the premises," and that it was "aware that the porta potties were being left on the loading docks over the weekends and that this created a dangerous situation."

Cousins's former director of property management, Allen Froman, testified by deposition that he had been in charge of security for the building. He hired a company to monitor security. Froman testified that he directed that the portable toilets ready for cleaning be placed off the loading dock and against a back wall because of their odor. He said that neither he nor his staff had any first-hand knowledge regarding the incident involving James.

---

[1] James sued and settled with a number of other parties.

SpawMaxwell's superintendent David Perez testified that he discussed putting the portable toilets that needed cleaning on the loading dock at a meeting Froman attended. He testified that Cousins would know of the placement because its security contractor would have seen them put there. Perez testified that he instructed his employees to lock the wheels of the portable toilets. He agreed that failure to lock the wheels in that location would create a dangerous situation.

Cousins filed a no-evidence motion[2] for summary judgment, arguing that it was entitled to summary judgment because "there is no-evidence that Cousins exercised or retained control over the manner in which the mobile portable toilet was left in the loading dock and that it had actual knowledge of the alleged dangerous condition resulting in the Plaintiff's injuries."

The district court granted Cousins's no-evidence motion for summary judgment. The court did not specify a particular basis for the ruling.

**Discussion**

James contends that the trial court erred in granting Cousins's motion for summary judgment. He argues that there was evidence creating material fact issues regarding Cousins's control and actual knowledge. We review a summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Because the trial court did not specify a particular ground on which it granted the motion, James must show that neither of the two grounds alleged in Cousins's no-evidence motion can support the trial court's judgment. *See FM Props. Operating Co.*

---

[2] Cousins also filed a traditional motion, but the trial court did not specifically rule on that motion. It was implicitly denied by operation of the Mother Hubbard clause included in the judgment denying all relief not granted.

*v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). If we find that summary judgment is proper on either ground, we must affirm. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

We review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). We indulge all reasonable inferences and resolve any doubt in the nonmovant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A grant of a no-evidence motion is inappropriate if the nonmovant presents more than a scintilla of probative evidence raising a genuine issue of material fact. *King Ranch*, 118 S.W.3d at 751. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is so weak as to create no more than a mere suspicion or surmise. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

Texas law shields property owners from liability for many injuries that befall independent contractors due to circumstances that are not in the owner's control. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 95.002, .003 (West 2005).[3] A property owner will be held liable under

---

[3] Chapter 95 of the Texas Civil Practice and Remedies Code applies to the following types of claims:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

section 95.003 only if the plaintiff shows that the owner retained or exercised control over the manner in which the work was performed and had actual knowledge of the danger or condition which resulted in the plaintiff's injury. *Id.* § 95.003. The plaintiff must prove both of these elements before liability will be imposed on the owner. *Rueda v. Paschal*, 178 S.W.3d 107, 110 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The statutory "actual knowledge" standard replaces the pre-chapter 95 standard of constructive knowledge. *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 133 (Tex. App.—Houston [1st Dist.] 2005, no pet).

Before determining if there is evidence that Cousins had actual knowledge of the danger or condition, we must determine what the relevant danger or condition was. James contends

---

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Tex. Civ. Prac. & Rem. Code Ann. § 95.002 (West 2005). Chapter 95 describes a property owner's liability for the acts of an independent contractor as follows:

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003.

5

that leaving the portable toilet on the sidewalk of the loading dock constituted the danger. Cousins argues that whether the wheels were locked determines whether the toilet was dangerous.

While there is evidence that placing a portable toilet on the sidewalk near the loading dock with its wheels free to roll is dangerous, there is no evidence that placing a portable toilet where it was placed with its wheels locked would have created a dangerous condition.[4] James contends that Froman acknowledged in his deposition that placing the portable toilet on the sidewalk near the loading dock was dangerous. However, that is not precisely Froman's testimony. Froman testified to different concerns depending on whether the portable toilet was stationary or mobile. He testified that stationary toilets on the sidewalk created an obstacle to travel. When asked if he had any other concerns, he testified, "If they were trying to leave the stationary units there, no. If they were trying to leave the mobile units there, yes. The space isn't big enough." He added that the mobile units created an odor issue. Although Froman testified that he would have been concerned about the potential for the portable toilets to roll and fall, that was in response to a question that included the additional condition that the portable toilet was to be placed on the sidewalk *with its wheels unlocked*. Froman's stated concern about a risk was that the toilet could roll or fall in that position if it had wheels and those wheels were not locked. This statement does not show that the danger was created merely by placing a mobile, portable toilet near the loading dock.

---

[4] This opinion should not be construed as a determination regarding the inherent dangerousness of portable toilets with unlocked wheels. This scope of this opinion is constrained by the evidence in this record, which is limited to whether this particular placement of this toilet with its wheels unlocked created a dangerous condition.

This case is similar to *Rueda*, in which the subcontractor's injured employee contended that because the landowners knew that workers were using a ladder to access the basement of the house, the landowners had actual knowledge of the condition that caused the employee's injuries. *See* 178 S.W.3d at 109-10. The court held that knowledge of the existence of the ladder was not knowledge of the dangerous condition, and therefore summary judgment against the employee's claim was appropriate. *Id.* at 110. The employee also argued that, because § 95.003(2) uses the disjunctive "or," the appellee could be held liable if it had knowledge of the "danger" or "condition." *Id.* The court rejected this argument and regarded "danger" and "condition" to be synonymous in the context of the statute. *Id.* The court further said "it would be absurd to require a property owner to warn of a condition without some knowledge that the condition is dangerous." *Id.* Similarly, in this case, knowledge that portable toilets with wheels were being placed on the sidewalk near the loading dock is akin to knowledge that employees are using a ladder on a jobsite. That knowledge, alone, is not evidence of knowledge of a dangerous condition. There must be evidence that the owner was aware of how the ladder, toilet, or other item was being used that created a dangerous condition. Cousins's duty to warn would only arise if it knew that the wheels of the mobile portable toilets placed near the loading dock were unlocked. There is no dispute that mobile portable toilets with locked wheels placed near the loading dock would not be a dangerous condition.

There is no evidence in the record that Cousins actually knew mobile portable toilets were being placed on the sidewalk with their wheels unlocked. Neither Froman nor anyone else testified that merely placing the toilets on the sidewalk created a danger of their rolling and falling.

7

Perez's testimony that there was an oral agreement among the contractors to leave the mobile portable toilets on the sidewalk to be cleaned, that Froman knew of the agreement,[5] and that Perez instructed his workers to lock the wheels of a mobile portable toilet when placing it on the sidewalk does not show that Cousins knew toilets were being placed on the sidewalk with their wheels free to roll. We find no evidence in the record showing that Cousins had actual knowledge that the mobile portable toilet was being placed on the sidewalk with its wheels unlocked.

Because there is no evidence that Cousins actually knew of the alleged dangerous condition that caused James's injuries, the no-evidence motion for summary judgment was properly granted.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: May 30, 2008

---

[5] Although Froman denied any knowledge of such an agreement, we must disregard this evidence favoring the judgment under the no-evidence standard.

8