# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-05-00700-CV
---

**Larry L. Richard, Individually and as Personal Representative of the Estate of Larry Freeman Richard, Jr., Deceased, Theresa Richard as Next Friend to Brooke Richard and Britni Richard, Minors, Brandi Richard and Larry Freeman Richard, Sr., Appellants**

**v.**

**City of Austin d/b/a Austin Energy Corporation, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN502974, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Larry L. Richard, Individually and as Personal Representative of the Estate of Larry Freeman Richard, Jr., Deceased, Theresa Richard as Next Friend to Brooke Richard and Britni Richard, Minors, Brandi Richard, and Larry Freeman Richard, Sr. (collectively, "the Richards") sued the City of Austin d/b/a Austin Energy Corporation ("the City") for damages arising out of Larry Freeman Richard, Jr.'s death from a fall while working on property owned by the City. The Richards alleged that the contractor was negligent and that the City was responsible for the damages arising therefrom. The trial court granted summary judgment for the City. The Richards contend that summary judgment was improper because there was some evidence that the City had actual knowledge of the danger or condition that caused Mr. Richard's death. We will affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The City owned the Holly Street Power Plant located in Austin, Texas. In September 2002, the City solicited proposals for the demolition of two fuel oil tanks located at the plant. The City awarded the demolition project to Alpha Technical Services, and the parties entered into a contract for demolition of the tanks. Mr. Richard was an Alpha Technical Services employee and was working on the tank demolition when he died. Mr. Richard and a co-worker were using the "stitch cut" method for the demolition. This demolition method involved using a blowtorch to cut the steel roof of a large fuel oil storage tank into pieces that were then lowered to the ground using a crane. The method is referred to as "stitch cut" because an inch or so of the metal is left uncut until the piece is ready to be lowered to the ground. Just before the accident, Mr. Richard was in a personnel lift next to the roof of the tank. He exited the lift and walked across the roof to the center of the tank. At that time, the roof had not been cut into sections. While Mr. Richard was on the roof, his co-worker cut the area directly in front of the lift into sections and left the sections balanced on a cross beam supporting the tank roof. The sections were not marked or otherwise identified as being completely cut from the roof. Unaware that the roof had been cut into sections, Mr. Richard stepped on one of the unmarked cut sections of steel plate while attempting to return to the lift. The steel plate section tipped to one side, causing Mr. Richard to fall forty feet to his death.

The Richards brought claims against the City and others. The Richards alleged that the City was negligent in failing to provide Mr. Richard a safe place to work, failing to properly supervise the workplace, failing to instruct regarding the recognition and avoidance of unsafe conditions, and failing to provide a proper fall arrest system, covers, or guardrail systems. Beryl Ann

Richard, Mr. Richard's mother, intervened asserting the same cause of action against the City. The City filed a no-evidence motion for summary judgment pursuant to Texas Rule of Civil Procedure 166a(i), contending that chapter 95 of the Texas Civil Practice and Remedies Code governed the City's liability and that the Richards and the intervenor could not satisfy the requirements of the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001-.004 (West 2005). Specifically, the City asserted that there was no evidence that the City exercised or retained control over the manner in which Mr. Richard performed his work or that it had actual knowledge of the danger or condition that resulted in his death. *See id.* § 95.003.

The Richards and the intervenor filed a response and attached summary-judgment evidence, including the Occupational Safety and Health Administration investigation case file, an expert's affidavit, and the deposition testimony of Timothy Moore, the City's project manager for the demolition project. The district court granted the City's motion for summary judgment and signed an order stating that "no genuine issues of material fact exist as to whether the City of Austin had actual knowledge of the danger or condition pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 95.003." The court expressed no opinion on the "control" ground asserted in the City's summary-judgment motion. The district court severed the Richards' claim against the City from those asserted against the co-defendants, and signed a take-nothing judgment in the City's favor. The Richards appeal from that order, contending that the summary judgment was improper because

3

there was a genuine issue of material fact as to whether the City had actual knowledge of the danger or condition that caused Mr. Richard's death.[1]

## STANDARD OF REVIEW

A no-evidence summary judgment is essentially a pretrial directed verdict, and we review it under a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). When a party moves for a no-evidence summary judgment under rule 166a(i), he must assert that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *see Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). A no-evidence summary judgment is improper if the non-movant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact with respect to each of the challenged elements. Tex. R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence presented rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch*, 118 S.W.3d at 750-51. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

---

[1] Counsel for the intervenor filed a letter with this Court expressing a desire to "join the appeal." The notice of appeal filed by the Richards is not a joint notice of appeal, *see* Tex. R. App. P. 25.1(c), nor did the intervenor file her own notice of appeal. Consequently, although this Court has jurisdiction over all parties to the trial court's judgment, we cannot reverse the summary judgment as to the intervenor. *Id.* (appellate court may not grant party failing to file notice of appeal more favorable relief than did trial court except for just cause).

## DISCUSSION

It is undisputed that the City owned the Holly Street Power Plant and that Mr. Richard was an employee of Alpha Technical Services, a contractor the City hired to dismantle the fuel oil tanks at the plant. Nor do the Richards dispute that chapter 95 of the civil practice and remedies code applies to their claim against the City. Chapter 95 is the Richards' exclusive remedy against the City and precludes common-law negligence liability. *See Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 88 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Chapter 95 provides that a property owner is not liable for the personal injury, death, or property damage to a contractor or his employees who construct, repair, renovate, or modify an improvement to real property, including injuries arising from the failure to provide a safe workplace, unless:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

Tex. Civ. Prac. & Rem. Code Ann. § 95.003. Thus, under the statute, evidence of both control *and* actual knowledge is required.

In its motion for summary judgment, the City asserted that there was no evidence it retained control over the work or had actual knowledge of the danger or condition resulting in Mr. Richard's injury. Regarding actual knowledge, the City contends that the danger or condition was the existence of a detached steel plate, unmarked, and balanced on a beam in an area used for

5

entering and exiting the personnel lift. The Richards counter that the danger was the overall demolition plan itself, and because the City knew Alpha Technical Services was using the "stitch cut" method to demolish the second tank, it had actual knowledge of the danger causing Mr. Richard's death.

The summary judgment evidence included the deposition testimony of Timothy Moore, the City's project manager for this demolition project. Moore testified that Alpha Technical Services originally presented a demolition plan that contemplated using a shearer method which involved using a shearer mounted on a "backhoe type device" that would cut the tank like a set of large scissors. After the first tank had been demolished using this method, Alpha Technical Services informed the City that it was dissatisfied with the shearer it had for the job because instead of using a scissor-like tool to cut the metal, it had a "nibbler" with a small cutting section. Using this type of shearer caused the demolition process to take longer. Moore testified that Alpha Technical Services informed him "that they wanted to change their approach and they were going to use cutting torches and main lifts to cut—take down the second tank." Moore testified that while he "knew they were . . . going through and they were stitch-cutting the pieces and . . . bringing them down after they got them cut free," Alpha Technical Services did not provide any further details about the "stitch cut" demolition process. There was no evidence that the "stitch cut" method was substantially more dangerous than the shearer method, or that, if it were, Moore was aware of that fact. Moore testified that he did not watch the Alpha Technical Services employees using the "stitch cut" method at the Holly Power Plant site until after Mr. Richard's accident, but he understood the method to involve "where you go through and you cut most of the piece of metal but you leave an inch or so to come

6

back in and just cut just before you're ready to bring the piece of metal down." Moore testified that each cut piece sat on the beams beneath it, or on another piece of steel plate until the workers put a crane clip on it and brought the piece down.

The evidence supports a conclusion that the workplace "condition" leading to Mr. Richard's fall was the presence of an unstable piece of steel plate completely cut, yet not removed from the roof, located adjacent to the personnel lift, with no marking or other notification that it was completely cut away from the rest of the roof. *Cf. City of Austin v. Leggett*, 257 S.W.3d 456, 470 (Tex. App.—Austin 2008, pet. denied) ("[T]he relevant unreasonably dangerous condition in a premise liability case is generally the condition at the time and place injury occurs, not some antecedent condition or situation that helps create a dangerous condition."). The Richards presented no evidence that the City had actual knowledge of that condition. There is no evidence that Moore knew that there was an unstable steel plate adjacent to the personnel lift or had any idea that Mr. Richard and his co-worker were conducting the demolition process in such a manner as to create the condition. To the contrary, Moore testified that the only time he observed the demolition process was after the accident.

The Richards argue, however, that the "danger" that caused Mr. Richard's death was the demolition plan itself, and that the City had actual knowledge that Alpha Technical Services had decided to switch from the shearer method to the "stitch cut" method. The Richards contend that the demolition plan using the "stitch cut" method was "inherently unreasonably dangerous and unsafe, something the City was well aware of." For the demolition plan to constitute a "danger" within the meaning of the statute, however, there must be evidence that (1) the demolition plan, even

7

if executed properly, would create a substantial risk of injury, or (2) it was likely that the demolition plan would not be executed properly, in such a manner as to create a substantial risk of injury. Chapter 95 requires that the City have actual knowledge of the condition *or* danger.

The Richards rely on two documents contained in the Occupational Safety and Health Administration investigation file as evidence that the demolition plan was a "danger." The first is a letter from the OSHA area director containing the following statement: "The area of the roof where Mr. Richard, Sr. had parked his personnel lift basket was not cut until after it was time for him to return to the personnel lift. This greatly increased the risk of falling through an unguarded hole." While this letter suggests that the unsafe manner in which Mr. Richard's co-worker executed the demolition plan increased the risk that he would fall, it is not evidence that the plan itself, if it had been executed properly, would have created a substantial risk of injury. Nor is it evidence tending to show a likelihood that this demolition plan would be executed improperly in an unsafe manner.

The second document on which the Richards rely is the OSHA Fatality/Catastrophe Report, which includes a factual description of the accident but does not comment on the demolition plan itself.

The summary judgment evidence also includes the affidavit of David T. Lashgari, an expert retained by the Richards. Lashgari avers that Alpha Technical Services violated at least ten federal laws governing workplace safety, and that these violations created an "environment characteristically identified by the existence of significant likelihood of serious injury or death to the worker." This statement may be some evidence that the demolition plan, as improperly carried out in violation of federal safety regulations, created a danger. It is not, however, evidence that the

8

demolition plan, if it had been done properly, would have created a substantial risk of injury. Lashgari also avers that "the employer committed the above referenced violations of the federal OSHA law even though the employer knew or should have known that demolition work is one of the most hazardous sub-specialty [sic] of the construction industry and that the above referenced laws and regulations had been designed with the specific purpose and objective of reducing the extreme hazards inherent in demolition projects." While this statement may be some evidence that Alpha Technical Services knew or should have known of the hazards of demolition projects generally, it is not evidence that the City had actual knowledge that the demolition plan, as described to it by Alpha Technical Services, entailed such danger. *See Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 133 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (statutory actual knowledge replaces pre-chapter 95 standard of constructive knowledge). Nor is it evidence that Alpha Technical Services was likely to carry out the plan improperly.

We conclude that the record contains no evidence that the City had actual knowledge of the condition that caused Mr. Richard's death—the unmarked unstable piece of metal at the exit from the personnel lift. Nor does the record contain evidence that the City had actual knowledge that the demolition plan itself constituted a danger within the meaning of the statute. Therefore, the trial court did not err in granting the City's no-evidence motion for summary judgment.

## CONCLUSION

Because there is no evidence that the City had actual knowledge of the danger or condition that caused Mr. Richard's death, we affirm the district court's summary judgment.

9

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Patterson and Pemberton

Affirmed

Filed:   May 13, 2009