COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-265-CV

 

 

KIMBERLY EISEN, INDIVIDUALLY                                         APPELLANTS

AND AS PERSONAL

REPRESENTATIVE OF THE
ESTATE

OF W. PAUL EISEN, MARANDA

EISEN, MARLENE EISEN, AND

WERNER HERMAN EISEN

 

                                                   V.

 

FOUR SEVENS OPERATING CO.                                                APPELLEE

LTD.

                                              ------------

 

            FROM THE 17TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION








Appellants Kimberly Eisen, individually and as
personal representative of the estate of W. Paul Eisen, Maranda Eisen, Marlene
Eisen, and Werner Herman Eisen appeal the trial court=s grant
of summary judgment in favor of Appellee Four Sevens Operating Co. Ltd. (AFSOC@).  In two issues, Appellants argue that the
trial court erred by granting FSOC=s
traditional and no-evidence motions for summary judgment because genuine issues
of material fact exist on each challenged element of Appellants= claims
asserted against FSOC.  We will affirm.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

FSOC owned and operated a natural gas wellsite
located in Fort Worth.  FSOC contracted
with Frac Tech Services, Ltd. to perform a Afracturing
job@ to
develop the gas resources at the site.[2]








On September 14, 2005, a problem arose that
required pump six to be disabled and taken Aoff
line.@  A Frac Tech crew member Ablocked
in@ pump
six so that its piping was shut off from the rest of the operation, and a leak
was discovered at the wellhead.  Paul
Eisen, a Frac Tech employee, set out to repair the leak.  At some point after the wellhead leak had
been discovered but before Paul had completed repairing the leak, Frank Autry,
a part owner of Frac Tech, arrived at the site and ordered that the pumps,
including pump six, be brought back on line. 
When pump six became pressurized, it exploded; Paul was struck with
piping, fluid under extreme pressure, or both, and he died.  At the time of the incident, Hunter Enis, the
FSOC Acompany
man,@ and a
few Frac Tech employees, including Autry, were in Frac Tech=s
technical control vehicle, or ATCV.@[3]








Appellants brought a wrongful death and survival
action against FSOC and other entities, alleging that FSOC=s
negligence proximately caused Paul=s death.[4]  FSOC filed a traditional motion for summary
judgment arguing that it was entitled to judgment as a matter of law on
Appellants= claims because FSOC did not
exercise control over the manner in which Frac Tech performed its work and
because FSOC did not have actual knowledge of the blocked-in valve that led to
the accident.  FSOC also filed a
no-evidence motion for summary judgment in which it contested the existence of
any evidence proving that it had actual knowledge of the danger or condition
that caused Paul=s death, which Appellants must
demonstrate as required by section 95.003(2) of the Texas Civil Practice and
Remedies Code.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 95.003(2)
(Vernon 2005).  FSOC specifically claimed
that there was no evidence that Enis Awas
aware of the blocked valve in the pipe before it was pressurized, or that Frac
Tech instructed its workers to pressurize a pipe that had a blocked valve.@  The trial court granted both motions for
summary judgment.  Appellants filed a
motion for new trial that was overruled by operation of law before bringing
this appeal.  See Tex. R. Civ. P.
329b(a), (c).

        III.  NO-EVIDENCE MOTION
FOR SUMMARY JUDGMENTCACTUAL KNOWLEDGE

In their second issue, Appellants argue that the
trial court erred by granting FSOC=s
no-evidence motion for summary judgment on the ground that FSOC had no actual
knowledge of the danger or condition that resulted in Paul=s death.

A.     Standard of Review








When a party moves for summary judgment under
both rules of civil procedure 166a(c) and 166a(i), we will first review the
trial court=s judgment under the standards
of rule 166a(i).  Ford Motor Co. v.
Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 
If the appellants failed to produce more than a scintilla of evidence
under that burden, then there is no need to analyze whether appellee=s
summary judgment proof satisfied the less stringent rule 166a(c) burden.  Id.

After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 207 (Tex. 2002).  The trial court
must grant the motion unless the nonmovant produces summary judgment evidence
that raises a genuine issue of material fact. 
See Tex. R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002).








When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).  Less than a
scintilla of evidence exists when the evidence is so weak that it does nothing
more than create a mere surmise or suspicion of a fact.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists when the evidence would enable reasonable and
fair-minded people to reach different conclusions.  Ridgway, 135 S.W.3d at 601; Merrell
Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  A genuine issue of material fact is raised by
presenting evidence on which a reasonable jury could return a verdict in the
nonmovant=s favor.  Moore, 981 S.W.2d at 266; see also
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255B56, 106
S. Ct. 2505, 2513B14 (1986) (interpreting Fed. R.
Civ. P. 56).  Accordingly, we review a no‑evidence
summary judgment for evidence that would enable reasonable and fair‑minded
jurors to differ in their conclusions.  Hamilton
v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).

B.     No Evidence of FSOC=s Actual
Knowledge








Chapter 95 of the Texas Civil Practice and
Remedies Code applies to a claim (1) against a property owner, contractor, or
subcontractor for personal injury, death, or property damage to an owner, a contractor,
a subcontractor, or an employee of a contractor or subcontractor (2) that
arises from the condition or use of an improvement to real property where the
contractor or subcontractor constructs, repairs, renovates, or modifies the
improvement.  Tex. Civ. Prac. & Rem.
Code Ann. ' 95.002.  AProperty
owner@ means a
person or entity that owns real property primarily used for commercial or
business purposes.  Id. ' 95.001(3).  Here, it is undisputed that Appellants= action
against FSOC is governed by chapter 95. 
Thus, it is undisputed that FSOC is a property owner within the meaning
of section 95.001(3), that FSOC=s
natural gas well is an improvement to real property within the meaning of
section 95.002(2), and that Frac Tech=s
operations on the natural gas well constituted construction, repair,
renovation, or modification of the well within the meaning of section
95.002(2).  See id. ' 95.001(3),
95.002(2); see also Francis v. Coastal Oil & Gas Corp., 130 S.W.3d
76, 84B85 (Tex.
App.CHouston
[1st Dist.] 2003, no pet.).








A property owner is liable under chapter 95 if
(1) the property owner exercises or retains some control over the manner in
which the work is performed, other than the right to order the work to start or
stop or to inspect progress or receive reports and (2) the property owner had actual
knowledge of the danger or condition resulting in the personal injury,
death, or property damage and failed to adequately warn.  Tex. Civ. Prac. & Rem. Code Ann. ' 95.003.  As is evident from the statute=s plain
language, the legislature did not include constructive knowledge as a basis for
imposing liability on a premises owner; instead, the legislature expressly
required that the premises owner have actual knowledge of the allegedly
dangerous condition.  See id.; Phillips
v. The Dow Chem. Co., 186 S.W.3d 121, 135 (Tex. App.CHouston
[1st Dist.] 2005, no pet.).  Actual
knowledge of a dangerous condition is what a person actually knows, as
distinguished from constructive knowledge, or what a person should have
known.  See, e.g., City of Corsicana
v. Stewart, 249 S.W.3d 412, 414B15 (Tex.
2008) (AActual
knowledge requires knowledge that the dangerous condition existed at the time
of the accident . . . .@); Tex. S. Univ. v. Gilford,
277 S.W.3d 65, 70 (Tex. App.CHouston
[1st Dist.] 2009, no pet. h.) (addressing distinction between actual knowledge
and constructive or imputed knowledge); Plainview Motels, Inc. v. Reynolds,
127 S.W.3d 21, 30 (Tex. App.CTyler
2003, pet. denied) (same). 
Circumstantial evidence establishes actual knowledge only when it either
directly or by reasonable inference supports that conclusion.  Stewart, 249 S.W.3d at 415.








In this case, FSOC moved for summary judgment on
the ground that there was no evidence that it had actual knowledge of the
danger or condition that gave rise to Paul=s
death.  The danger or condition giving
rise to Paul=s death was that pump six had
been shut down and blocked in before it was pressurized or that Autry had
ordered a pump with a blocked-in valve to be brought back on line.  Appellants were thus required to come forward
with summary judgment evidence raising a genuine issue of material fact that
FSOC had actual knowledge that pump six had been shut down and blocked in or
that Autry had ordered a pump with a blocked-in valve to be brought back on
line.  See Tex. R. Civ. P.
166a(i); Tex. Civ. Prac. & Rem. Code Ann. ' 95.003(2).

Appellants= summary
judgment evidence includes excerpts from the deposition testimony of Enis and
Brady Borden, Ruben Castillo, and Brian AllenCFrac
Tech employees at the time of the incident. 
Appellants= summary judgment evidence also
includes the affidavit of Lewis C. Barbe, P.E., a AWeekly
Time Summary@ for Frac Tech employees, and
the AFrac
Tech Services Accident, Injury and Incident Report.@

Appellants argue that their summary judgment
evidence raises a genuine issue of material fact regarding FSOC=s actual
knowledge because Enis was present in the TCV when pump six was taken off line
and blocked in and when Autry issued the command to bring pump six back on
line.  Appellants contend that anyone in
the TCV would have been able to hear what was occurring and that everything
that was occurring through the headsets was amplified in the TCV.  According to Appellants, considering Enis=s Alocation
and involvement, [Enis] could not possibly have been unaware of what was
occurring in the control room.@  We disagree.








Appellants=
argument and supporting relevant summary judgment evidence arguably implicate
three means by which Enis had actual knowledge that pump six had been shut down
and blocked in and that Autry had ordered a pump with a blocked-in valve to be
brought back on line:  (1) Enis wore a
headset in the TCV; (2) Enis heard the order to shut down pump six over the Aopen mic@ option
inside of the TCV or by merely being present in the TCV; and (3) Enis heard the
order to bring pump six back on line when Autry, who was also inside of the
TCV, gave the order in a loud, clear voice.

The deposition testimony demonstrates that Frac
Tech crew members inside of the TCV had the ability to communicate with crew
members outside of the TCV through the use of headsets.  Borden, who was the Apump
operator,@ testified that he geared down
pump six after he heard the call over his headset to shut down the pump.  Borden was located at a table outside of the
TCV, and he testified that PaulCnot EnisChad a
headset on the day of the incident. 
Indeed, Allen testified that Enis Awasn=t on the
headset.  Didn=t say a
word.@  There is no evidence from anyone who was
located inside of the TCV that Enis had a headset on when the order was given
to shut down pump six.  Accordingly,
there is no evidence raising a genuine issue of material fact that Enis
acquired actual knowledge that pump six had been taken off line through his use
of a headset.








The deposition testimony evidence also
demonstrates that the TCV had an Aopen mic@ option
that amplified into the TCV the communications between the Frac Tech crew
members over their headsets.  According
to Allen, AIf it=s open
mic, anybody in that TCV can hear what you=re
saying at any given time.@ 
There is no evidence, however, that the amplification option was
utilized when the order to shut down pump six was given.  Thus, there is no evidence that the order to
shut down pump six was amplified throughout the TCV.  To the extent Appellants argue that Enis had
actual knowledge regarding pump six=s
blocked-in valve merely because he was inside of the TCV when the Frac Tech
crew members in the TCV gave the initial order to shut down pump six, this
evidence, if anything, merely demonstrates that Enis should have knownCnot that
he actually knewCthat pump six had been taken off
line and blocked in.  That Enis had
constructive knowledge that pump six had been taken off line and blocked in is
not evidence that he had actual knowledge that pump six had been taken off line
and blocked in, which is what section 95.003(2) expressly demands.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 95.003(2);
Phillips, 186 S.W.3d at 135.








There is further deposition testimony evidence
that Autry ordered in a loud, clear voice over his headset to bring the pumps,
including pump six, back on line and that, given the tone and volume of Autry=s voice,
those persons inside of the TCV would have heard the order and known what was Agoing
on.@  Although the evidence that Autry gave the
order to bring pump six back on line in a loud, clear voice raises an inference
that Enis, who was inside the TCV at the time, heard Autry give the order to
bring pump six back on line, the evidence does not raise a genuine issue of
material fact that Enis knew Autry gave an order to bring back on line a pump
that had been blocked in.

Appellants=
retained expert witness, Barbe, sets forth in his affidavit the documents and
materials that he reviewed and relied upon to arrive at his opinions.  In summarizing the information contained
within these materials, he opines that Enis Ahad
actual knowledge of the dangers and conditions which resulted in the death of
Paul Eisen.@ 
Considering the evidence relied upon by Barbe, however, this is a
conclusory statement that does nothing more than create a mere surmise or
suspicion of fact; it is not evidence on which a reasonable jury could return a
verdict in Appellants= favor.  See Moore, 981 S.W.2d at 266;
Kindred, 650 S.W.2d at 63.

Appellants= summary
judgment evidence of Frac Tech=s AWeekly
Time Summary@ and the AFrac
Tech Services Accident, Injury and Incident Report@ do not
set forth any evidence raising a genuine issue of material fact that FSOC had
actual knowledge of the danger or condition that resulted in Paul=s death.








The dissent states that Athe
majority discusses only whether Appellants conclusively proved that Hunter Enis
had actual knowledge that the pump had been shut down and blocked in and that
Autry had ordered a pump with a blocked-in valve to be brought back on line.@  It seems to suggest that we also should have
examined the multitude of other ways in which Appellants alleged that FSOC was
grossly negligent, including lack of adequate communication, forcing employees
to work long hours, forcing employees to speed up operations, and the failure
of management to ascertain the status of operations.  The dissent, however, ignores section
95.003(2), which requires that FSOC must have had actual knowledge of the
danger or condition resulting in the personal injury, death, or property damage.  It is undisputed that the danger or condition
giving rise to Paul=s death was that pump six had
been shut down and blocked in before it was pressurized or that Autry had
ordered a pump with a blocked-in valve to be brought back on line.  FSOC=s
alleged lack of adequate communication, forcing its employees to work long
hours, forcing its employees to speed up operations, and failure to ascertain
the status of operations were not dangers or conditions that gave rise to Paul=s
death.  The other evidence relied upon by
the dissent simply fails to raise a genuine issue of material fact regarding
FSOC=s actual
knowledge; it shows FSOC=s constructive knowledge of the
dangerous condition or it is so weak that it does nothing more than create a
mere surmise or suspicion of a fact.








Having examined the entire record in the light
most favorable to Appellants, indulging every reasonable inference and
resolving any doubts against FSOC=s
motion, we hold that Appellants failed to produce summary judgment evidence
raising a genuine issue of material fact that FSOC had actual knowledge of the
danger or condition that resulted in Paul=s
death.  See Tex. R. Civ. P.
166a(i); Tex. Civ. Prac. & Rem. Code Ann. ' 95.003(2).  Accordingly, we hold that the trial court did
not err by granting FSOC=s no-evidence motion for summary
judgment.  We overrule Appellants= second
issue.

Appellants= second
issue is dispositive of this appeal. 
Having overruled it, we need not address Appellants= first
issue complaining that the trial court erred by granting FSOC=s
traditional motion for summary judgment. 
See Tex. R. App. P. 47.1.

                                          IV.  CONCLUSION

Having overruled Appellants=
dispositive second issue, we affirm the trial court=s
judgment.

 

BILL
MEIER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

 

DAUPHINOT, J. filed a
dissenting opinion.

 

DELIVERED:  May 28, 2009











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-265-CV

 

 

KIMBERLY
EISEN, INDIVIDUALLY                                         APPELLANTS

AND AS PERSONAL

REPRESENTATIVE OF THE
ESTATE

OF W. PAUL EISEN, MARANDA

EISEN, MARLENE EISEN, AND

WERNER HERMAN EISEN

 

                                                   V.

 

FOUR
SEVENS OPERATING CO.                                                APPELLEE

LTD.                                                                                                  

 

                                              ------------

 

            FROM THE 17TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------








Because I believe there is an issue of fact, I
must respectfully dissent from the majority opinion.  At issue are whether FSOC exercised control
over the manner in which Frac Tech performed its work and whether FSOC had
actual knowledge of the danger or condition that caused Paul Eisen=s
death.  The majority limits the issue of
knowledge to knowledge of the blocked-in valve that led to the explosion when
the well went back on line.  Appellants,
however, did not limit their theories of recovery to knowledge of the blocked-in
valve, but also pled that defendants, including FSOC, were grossly negligent in
certain respects and that such conduct was a proximate cause of the explosion
resulting in Paul Eisen=s injuries and death.  Appellants enumerated the following ways,
among others, in which the defendants were grossly negligent, thereby creating
the section 95.003(2) danger or condition giving rise to Paul Eisen=s death[1]:

g. Lack of adequate communication between co-workers and/or between
workers and management at the work site;

 

. . .
  

 

j. Forcing employees to work exhaustingly long hours with little or no
rent [sic] so they were no longer mentally sharp and capable of understanding
the consequences of their actions;

 

k. Forcing the employees to speed up operations in a dangerous work
environment in order to meet cost and profit objections [sic] without regard
for the value of human life; and

 

l. The failure of management to ascertain the status of operations and
the condition of equipment before attempting to operate the system under
potentially dangerous conditions.

 








Rather than considering whether there is an issue of fact, the
majority discusses only whether Appellants conclusively proved that Hunter Enis
had actual knowledge that the pump had been shut down and blocked in and that
Autry had ordered a pump with a blocked-in valve to be brought back on
line.  The proper question is whether
Appellants have raised an issue of fact. 
Another appropriate question is whether the consecutive grueling twenty-
to twenty-three-hour work days created a dangerous condition.

Enis testified in his deposition that he was in
the trailer watching a monitor, and it showed drops in pressure that indicated
that something had gone wrong.  Brian
Allen referred to Enis as the company man. 
He testified that Enis came driving up just as Athe job
was going off@ at 7:00 a.m.  Autry arrived a little later, and things were
not going well, so Autry grabbed the headset and started screaming.  Allen testified that Enis was inside the TCV
and that he was Afully aware of what [was] going
on.@  Autry was outside on the headset, screaming
orders.  Allen testified that Ainside
that TCV, you know, it=s amplified. . . . Everything
that=s said
on the headset is amplified through a speaker.@








Allen also testified that even if the open mic is
not turned on, Ayou can understand what=s going
on.  I mean I=ve been
around people and I=ve B hadn=t had a
headset before andCand just by listening to them
talk, you know, you can tell what=s going
on. . . .  Somebody that=s
experienced would know.@ 
He also testified, ABut they
had to have heard something because Joe Bueno was asking if it couldCif it
had to be turned off line.  So he=s visualChe=s
physically talking into the headset with whoever=s around
him [in the TCV], next to him.@  It was agreed that you could see the wellhead
from inside the TCV.

Barbe stated in his affidavit that, based on the
documents and materials he reviewed, he concluded that Enis had actual
knowledge of the dangers and conditions which resulted in the death of Paul
Eisen.

There was deposition testimony that Enis
determined the speed of the work and had to approve the long work hours.  There was some evidence that Enis knew that
the pump had been shut down and that it was being brought back on line while
the pump valve was still blocked in.

Considering the record before this court, genuine
issues of material fact exist concerning whether FSOC had actual knowledge of
the dangers or conditions that resulted in Paul Eisen=s death,
including Enis=s role in requiring consecutive
twenty- to twenty-three-hour work days that affected judgment and safety and
his role in the actions that resulted in the explosion that killed Paul Eisen.








Appellants were not required to conclusively
prove their case to defeat FSOC=s motion
for summary judgment.  Their only burden
was to raise a genuine issue of material fact. 
Based on the record before us, I would hold that Appellants have met
that burden.  Because the majority does
not, I must respectfully dissent.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

DELIVERED:  May 28, 2009











[1]See Tex. R. App. P. 47.4.





[2]Fracturing operations
involve the injection of water, sand, and chemicals into the ground through a
series of pipes using diesel engines as pumps to create a high pressure
environment.  Fracturing cracks the rock,
and sand is inserted to hold the cracks open, which allows gas to escape to the
surface.





[3]The TCV, which is a Alarge motor home,@ contains equipment used
to monitor ongoing fracturing operations. 
Members of the Frac Tech crew inside of the TCV communicate with members
of the crew outside of the TCV by using Aheadsets.@





[4]According to Appellants= third amended original
petition, FSOC was Aaware of the hazards
associated with the fracturing operations it conducted,@ but it Afailed to take proper
precautions and corrective measures necessary to provide a safe work place,@ failed Ato properly inspect,
advise, correct[,] and warn of hazards involved,@ and failed Ato provide for the safety
of workers involved in these operations.@





[1]Tex. Civ. Prac. & Rem. Code Ann. ' 95.003(2) (Vernon
2005).