

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-265-CV

KIMBERLY EISEN, INDIVIDUALLY
AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF W. PAUL EISEN, MARANDA
EISEN, MARLENE EISEN, AND
WERNER HERMAN EISEN

APPELLANTS

V.

FOUR SEVENS OPERATING CO.
LTD.

APPELLEE

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellants Kimberly Eisen, individually and as personal representative of

the estate of W. Paul Eisen, Maranda Eisen, Marlene Eisen, and Werner Herman

---

[1] *See* Tex. R. App. P. 47.4.

Eisen appeal the trial court's grant of summary judgment in favor of Appellee Four Sevens Operating Co. Ltd. ("FSOC"). In two issues, Appellants argue that the trial court erred by granting FSOC's traditional and no-evidence motions for summary judgment because genuine issues of material fact exist on each challenged element of Appellants' claims asserted against FSOC. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

FSOC owned and operated a natural gas wellsite located in Fort Worth. FSOC contracted with Frac Tech Services, Ltd. to perform a "fracturing job" to develop the gas resources at the site.[2]

On September 14, 2005, a problem arose that required pump six to be disabled and taken "off line." A Frac Tech crew member "blocked in" pump six so that its piping was shut off from the rest of the operation, and a leak was discovered at the wellhead. Paul Eisen, a Frac Tech employee, set out to repair the leak. At some point after the wellhead leak had been discovered but before Paul had completed repairing the leak, Frank Autry, a part owner of Frac Tech,

---

[2] Fracturing operations involve the injection of water, sand, and chemicals into the ground through a series of pipes using diesel engines as pumps to create a high pressure environment. Fracturing cracks the rock, and sand is inserted to hold the cracks open, which allows gas to escape to the surface.

arrived at the site and ordered that the pumps, including pump six, be brought back on line. When pump six became pressurized, it exploded; Paul was struck with piping, fluid under extreme pressure, or both, and he died. At the time of the incident, Hunter Enis, the FSOC "company man," and a few Frac Tech employees, including Autry, were in Frac Tech's technical control vehicle, or "TCV."[3]

Appellants brought a wrongful death and survival action against FSOC and other entities, alleging that FSOC's negligence proximately caused Paul's death.[4] FSOC filed a traditional motion for summary judgment arguing that it was entitled to judgment as a matter of law on Appellants' claims because FSOC did not exercise control over the manner in which Frac Tech performed its work and because FSOC did not have actual knowledge of the blocked-in valve that led to the accident. FSOC also filed a no-evidence motion for summary judgment in which it contested the existence of any evidence proving

---

[3] The TCV, which is a "large motor home," contains equipment used to monitor ongoing fracturing operations. Members of the Frac Tech crew inside of the TCV communicate with members of the crew outside of the TCV by using "headsets."

[4] According to Appellants' third amended original petition, FSOC was "aware of the hazards associated with the fracturing operations it conducted," but it "failed to take proper precautions and corrective measures necessary to provide a safe work place," failed "to properly inspect, advise, correct[,] and warn of hazards involved," and failed "to provide for the safety of workers involved in these operations."

that it had actual knowledge of the danger or condition that caused Paul's death, which Appellants must demonstrate as required by section 95.003(2) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 95.003(2) (Vernon 2005). FSOC specifically claimed that there was no evidence that Enis "was aware of the blocked valve in the pipe before it was pressurized, or that Frac Tech instructed its workers to pressurize a pipe that had a blocked valve." The trial court granted both motions for summary judgment. Appellants filed a motion for new trial that was overruled by operation of law before bringing this appeal. *See* Tex. R. Civ. P. 329b(a), (c).

### III. NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT—ACTUAL KNOWLEDGE

In their second issue, Appellants argue that the trial court erred by granting FSOC's no-evidence motion for summary judgment on the ground that FSOC had no actual knowledge of the danger or condition that resulted in Paul's death.

#### A. Standard of Review

When a party moves for summary judgment under both rules of civil procedure 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004). If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether

4

appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id*.

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id*.; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). Less than a scintilla of evidence exists when the evidence is so weak that it does nothing

5

more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Ridgway*, 135 S.W.3d at 601; *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A genuine issue of material fact is raised by presenting evidence on which a reasonable jury could return a verdict in the nonmovant's favor. *Moore*, 981 S.W.2d at 266; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56, 106 S. Ct. 2505, 2513–14 (1986) (interpreting Fed. R. Civ. P. 56). Accordingly, we review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

**B.    No Evidence of FSOC's Actual Knowledge**

Chapter 95 of the Texas Civil Practice and Remedies Code applies to a claim (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, a subcontractor, or an employee of a contractor or subcontractor (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

6

Tex. Civ. Prac. & Rem. Code Ann. § 95.002. "Property owner" means a person or entity that owns real property primarily used for commercial or business purposes. *Id*. § 95.001(3). Here, it is undisputed that Appellants' action against FSOC is governed by chapter 95. Thus, it is undisputed that FSOC is a property owner within the meaning of section 95.001(3), that FSOC's natural gas well is an improvement to real property within the meaning of section 95.002(2), and that Frac Tech's operations on the natural gas well constituted construction, repair, renovation, or modification of the well within the meaning of section 95.002(2). *See id*. § 95.001(3), 95.002(2); *see also Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 84–85 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

A property owner is liable under chapter 95 if (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports and (2) the property owner had *actual knowledge* of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn. Tex. Civ. Prac. & Rem. Code Ann. § 95.003. As is evident from the statute's plain language, the legislature did not include constructive knowledge as a basis for imposing liability on a premises owner; instead, the legislature expressly required that the premises

7

owner have actual knowledge of the allegedly dangerous condition. *See id.*; *Phillips v. The Dow Chem. Co.*, 186 S.W.3d 121, 135 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Actual knowledge of a dangerous condition is what a person actually knows, as distinguished from constructive knowledge, or what a person should have known. *See, e.g., City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) ("Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident . . . ."); *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 70 (Tex. App.—Houston [1st Dist.] 2009, no pet. h.) (addressing distinction between actual knowledge and constructive or imputed knowledge); *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 30 (Tex. App.—Tyler 2003, pet. denied) (same). Circumstantial evidence establishes actual knowledge only when it either directly or by reasonable inference supports that conclusion. *Stewart*, 249 S.W.3d at 415.

In this case, FSOC moved for summary judgment on the ground that there was no evidence that it had actual knowledge of the danger or condition that gave rise to Paul's death. The danger or condition giving rise to Paul's death was that pump six had been shut down and blocked in before it was pressurized or that Autry had ordered a pump with a blocked-in valve to be brought back on line. Appellants were thus required to come forward with summary judgment evidence raising a genuine issue of material fact that FSOC

8

had actual knowledge that pump six had been shut down and blocked in or that Autry had ordered a pump with a blocked-in valve to be brought back on line. *See* Tex. R. Civ. P. 166a(i); Tex. Civ. Prac. & Rem. Code Ann. § 95.003(2).

Appellants' summary judgment evidence includes excerpts from the deposition testimony of Enis and Brady Borden, Ruben Castillo, and Brian Allen—Frac Tech employees at the time of the incident. Appellants' summary judgment evidence also includes the affidavit of Lewis C. Barbe, P.E., a "Weekly Time Summary" for Frac Tech employees, and the "Frac Tech Services Accident, Injury and Incident Report."

Appellants argue that their summary judgment evidence raises a genuine issue of material fact regarding FSOC's actual knowledge because Enis was present in the TCV when pump six was taken off line and blocked in and when Autry issued the command to bring pump six back on line. Appellants contend that anyone in the TCV would have been able to hear what was occurring and that everything that was occurring through the headsets was amplified in the TCV. According to Appellants, considering Enis's "location and involvement, [Enis] could not possibly have been unaware of what was occurring in the control room." We disagree.

Appellants' argument and supporting relevant summary judgment evidence arguably implicate three means by which Enis had actual knowledge

9

that pump six had been shut down and blocked in and that Autry had ordered a pump with a blocked-in valve to be brought back on line: (1) Enis wore a headset in the TCV; (2) Enis heard the order to shut down pump six over the "open mic" option inside of the TCV or by merely being present in the TCV; and (3) Enis heard the order to bring pump six back on line when Autry, who was also inside of the TCV, gave the order in a loud, clear voice.

The deposition testimony demonstrates that Frac Tech crew members inside of the TCV had the ability to communicate with crew members outside of the TCV through the use of headsets. Borden, who was the "pump operator," testified that he geared down pump six after he heard the call over his headset to shut down the pump. Borden was located at a table outside of the TCV, and he testified that Paul—not Enis—had a headset on the day of the incident. Indeed, Allen testified that Enis "wasn't on the headset. Didn't say a word." There is no evidence from anyone who was located inside of the TCV that Enis had a headset on when the order was given to shut down pump six. Accordingly, there is no evidence raising a genuine issue of material fact that Enis acquired actual knowledge that pump six had been taken off line through his use of a headset.

The deposition testimony evidence also demonstrates that the TCV had an "open mic" option that amplified into the TCV the communications between

10

the Frac Tech crew members over their headsets. According to Allen, "If it's open mic, anybody in that TCV can hear what you're saying at any given time." There is no evidence, however, that the amplification option was utilized when the order to shut down pump six was given. Thus, there is no evidence that the order to shut down pump six was amplified throughout the TCV. To the extent Appellants argue that Enis had actual knowledge regarding pump six's blocked-in valve merely because he was inside of the TCV when the Frac Tech crew members in the TCV gave the initial order to shut down pump six, this evidence, if anything, merely demonstrates that Enis should have known—not that he actually knew—that pump six had been taken off line and blocked in. That Enis had constructive knowledge that pump six had been taken off line and blocked in is not evidence that he had actual knowledge that pump six had been taken off line and blocked in, which is what section 95.003(2) expressly demands. *See* Tex. Civ. Prac. & Rem. Code Ann. § 95.003(2); *Phillips*, 186 S.W.3d at 135.

There is further deposition testimony evidence that Autry ordered in a loud, clear voice over his headset to bring the pumps, including pump six, back on line and that, given the tone and volume of Autry's voice, those persons inside of the TCV would have heard the order and known what was "going on." Although the evidence that Autry gave the order to bring pump six back on line

11

in a loud, clear voice raises an inference that Enis, who was inside the TCV at the time, heard Autry give the order to bring pump six back on line, the evidence does not raise a genuine issue of material fact that Enis knew Autry gave an order to bring back on line a pump that had been blocked in.

Appellants' retained expert witness, Barbe, sets forth in his affidavit the documents and materials that he reviewed and relied upon to arrive at his opinions. In summarizing the information contained within these materials, he opines that Enis "had actual knowledge of the dangers and conditions which resulted in the death of Paul Eisen." Considering the evidence relied upon by Barbe, however, this is a conclusory statement that does nothing more than create a mere surmise or suspicion of fact; it is not evidence on which a reasonable jury could return a verdict in Appellants' favor. *See Moore*, 981 S.W.2d at 266; *Kindred*, 650 S.W.2d at 63.

Appellants' summary judgment evidence of Frac Tech's "Weekly Time Summary" and the "Frac Tech Services Accident, Injury and Incident Report" do not set forth any evidence raising a genuine issue of material fact that FSOC had actual knowledge of the danger or condition that resulted in Paul's death.

The dissent states that "the majority discusses only whether Appellants conclusively proved that Hunter Enis had actual knowledge that the pump had been shut down and blocked in and that Autry had ordered a pump with a

12

blocked-in valve to be brought back on line." It seems to suggest that we also should have examined the multitude of other ways in which Appellants alleged that FSOC was grossly negligent, including lack of adequate communication, forcing employees to work long hours, forcing employees to speed up operations, and the failure of management to ascertain the status of operations. The dissent, however, ignores section 95.003(2), which requires that FSOC must have had actual knowledge of *the danger or condition resulting in the personal injury, death, or property damage*. It is undisputed that the danger or condition giving rise to Paul's death was that pump six had been shut down and blocked in before it was pressurized or that Autry had ordered a pump with a blocked-in valve to be brought back on line. FSOC's alleged lack of adequate communication, forcing its employees to work long hours, forcing its employees to speed up operations, and failure to ascertain the status of operations were not dangers or conditions that gave rise to Paul's death. The other evidence relied upon by the dissent simply fails to raise a genuine issue of material fact regarding FSOC's actual knowledge; it shows FSOC's constructive knowledge of the dangerous condition or it is so weak that it does nothing more than create a mere surmise or suspicion of a fact.

Having examined the entire record in the light most favorable to Appellants, indulging every reasonable inference and resolving any doubts

13

against FSOC's motion, we hold that Appellants failed to produce summary judgment evidence raising a genuine issue of material fact that FSOC had actual knowledge of the danger or condition that resulted in Paul's death. *See* Tex. R. Civ. P. 166a(i); Tex. Civ. Prac. & Rem. Code Ann. § 95.003(2). Accordingly, we hold that the trial court did not err by granting FSOC's no-evidence motion for summary judgment. We overrule Appellants' second issue.

Appellants' second issue is dispositive of this appeal. Having overruled it, we need not address Appellants' first issue complaining that the trial court erred by granting FSOC's traditional motion for summary judgment. *See* Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having overruled Appellants' dispositive second issue, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

DELIVERED: May 28, 2009

14



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-08-265-CV

KIMBERLY EISEN, INDIVIDUALLY
AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF W. PAUL EISEN, MARANDA
EISEN, MARLENE EISEN, AND
WERNER HERMAN EISEN

APPELLANTS

V.

FOUR SEVENS OPERATING CO.
LTD.

APPELLEE

------------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

Because I believe there is an issue of fact, I must respectfully dissent from the majority opinion. At issue are whether FSOC exercised control over the manner in which Frac Tech performed its work and whether FSOC had actual knowledge of the danger or condition that caused Paul Eisen's death.

The majority limits the issue of knowledge to knowledge of the blocked-in valve that led to the explosion when the well went back on line. Appellants, however, did not limit their theories of recovery to knowledge of the blocked-in valve, but also pled that defendants, including FSOC, were grossly negligent in certain respects and that such conduct was a proximate cause of the explosion resulting in Paul Eisen's injuries and death. Appellants enumerated the following ways, among others, in which the defendants were grossly negligent, thereby creating the section 95.003(2) danger or condition giving rise to Paul Eisen's death[1]:

> g. Lack of adequate communication between co-workers and/or between workers and management at the work site;
>
> . . .
>
> j. Forcing employees to work exhaustingly long hours with little or no rent [sic] so they were no longer mentally sharp and capable of understanding the consequences of their actions;
>
> k. Forcing the employees to speed up operations in a dangerous work environment in order to meet cost and profit objections [sic] without regard for the value of human life; and
>
> l. The failure of management to ascertain the status of operations and the condition of equipment before attempting to operate the system under potentially dangerous conditions.

---

[1] Tex. Civ. Prac. & Rem. Code Ann. § 95.003(2) (Vernon 2005).

2

Rather than considering whether there is an issue of fact, the majority discusses only whether Appellants conclusively proved that Hunter Enis had actual knowledge that the pump had been shut down and blocked in and that Autry had ordered a pump with a blocked-in valve to be brought back on line. The proper question is whether Appellants have raised an issue of fact. Another appropriate question is whether the consecutive grueling twenty- to twenty-three-hour work days created a dangerous condition.

Enis testified in his deposition that he was in the trailer watching a monitor, and it showed drops in pressure that indicated that something had gone wrong. Brian Allen referred to Enis as the company man. He testified that Enis came driving up just as "the job was going off" at 7:00 a.m. Autry arrived a little later, and things were not going well, so Autry grabbed the headset and started screaming. Allen testified that Enis was inside the TCV and that he was "fully aware of what [was] going on." Autry was outside on the headset, screaming orders. Allen testified that "inside that TCV, you know, it's amplified. . . . Everything that's said on the headset is amplified through a speaker."

Allen also testified that even if the open mic is not turned on, "you can understand what's going on. I mean I've been around people and I've – hadn't had a headset before and—and just by listening to them talk, you know, you

3

can tell what's going on. . . . Somebody that's experienced would know." He also testified, "But they had to have heard something because Joe Bueno was asking if it could—if it had to be turned off line. So he's visual—he's physically talking into the headset with whoever's around him [in the TCV], next to him." It was agreed that you could see the wellhead from inside the TCV.

Barbe stated in his affidavit that, based on the documents and materials he reviewed, he concluded that Enis had actual knowledge of the dangers and conditions which resulted in the death of Paul Eisen.

There was deposition testimony that Enis determined the speed of the work and had to approve the long work hours. There was some evidence that Enis knew that the pump had been shut down and that it was being brought back on line while the pump valve was still blocked in.

Considering the record before this court, genuine issues of material fact exist concerning whether FSOC had actual knowledge of the dangers or conditions that resulted in Paul Eisen's death, including Enis's role in requiring consecutive twenty- to twenty-three-hour work days that affected judgment and safety and his role in the actions that resulted in the explosion that killed Paul Eisen.

Appellants were not required to conclusively prove their case to defeat FSOC's motion for summary judgment. Their only burden was to raise a

4

genuine issue of material fact.  Based on the record before us, I would hold that Appellants have met that burden.  Because the majority does not, I must respectfully dissent.


                                        LEE ANN DAUPHINOT
                                        JUSTICE

DELIVERED:  May 28, 2009

5